FILED

1   PAUL W. HARRISON, an individual, Defendant *in Pro Per*

2   5336 Vincent Avenue

2013 JUL 15  PM 2: 37

3   Los Angeles, CA  90041

4   Telephone:  (213) 819-5069

5   Email:     me2paul@aol.com

6

7                   **UNITED STATES DISTRICT COURT**

8                   **CENTRAL DISTRICT OF CALIFORNIA**

9                         **SOUTHERN DIVISION**

10

11   THERMARK HOLDINGS, INC., a          CASE NO. SACV13 – 00445 AG (ANx)
     Delaware corporation; THERMARK,
12   LLC, a Pennsylvania limited liability
     company;
13                                        Hon. Andrew J. Guilford
             Plaintiffs,
14
                 v.
15                                        **DEFENDANT AND CROSS-**
     LASERSKETCH LTD., an Illinois        **COMPAINANT HARRISON'S FIRST**
16   corporation; JDS INDUSTRIES,         **AMENDED COUNTERCLAIMS**
     INC., a South Dakota corporation;
17   PERMANENT IMPRESSIONS,
     INC., a Nevada corporation; PAUL     **DEFENDANT AND CROSS-**
18   W. HARRISON, an individual; AND      **COMPAINANT HARRISON'S DEMAND**
     DOES 1 through 10, inclusive         **FOR JURY TRIAL**
19
             Defendants.
20

21

22   ###

23   ###

24   ###

25   ###

26   ###

27   ###

28

                                         1

1  I.   **INTRODUCTION**

2      1.  The Complaint of Plaintiffs TherMark Holdings, Inc. and TherMark, LLC

3  (collectively "TherMark") in this matter states certain claims, among others, against

4  Defendant Paul W. Harrison ("Harrison") for Infringement of U.S. Patent No.

5  6,075,223 and 6,313,436 (collectively Patents-in-Suit) in violation of 35 U.S.C. §

6  271; Unfair Business Practices, a violation of California Business and Profession

7  Code § 17200 *et seq.*; Misappropriation of Trade Secrets, a violation of California

8  Civil Code § 3426 *et seq.*; and Breach of Contract.

9      2.  Harrison answered and counterclaimed for, among other things, unfair

10  business practices and intentional infliction of emotional distress.  (Harrison Answer,

11  Dkt. No. 20.)

12      3.  TherMark moved the Court to dismiss and strike the unfair business

13  practices and intentional infliction of emotional distress claims made by Harrison

14  against it.  (TherMark's Motion to Dismiss and Strike the Counterclaims of

15  Defendant Paul Harrison.  (TherMark Motion, Dkt. No. 29.)

16      4.  The Court granted TherMark's request to dismiss Harrison's claims for

17  unfair business practices and intentional infliction of emotional distress with leave to

18  amend.  (Civil Minutes – General, Dkt. No. 44.)

19  II.   **PARTIES**

20      5.  As stated in Plaintiffs' Complaint, TherMark LLC, is a limited liability

21  company organized and existing under the laws of Pennsylvania. (Complaint ¶ 1)

22      6.  As stated in Plaintiffs' Complaint, TherMark Holdings, Inc. is a

23  corporation organized and existing under the laws of Delaware, and wholly owns

24  TherMark, LLC. (Complaint ¶ 2)

25      7.  As stated in Plaintiffs' Complaint, TherMark LLC and TherMark

26  Holdings, Inc. have a principal place of business at 33 Hammond, Suite 205, Irvine,

27  California 92618. (Complaint ¶ 3)

28  ###

8.  Paul W. Harrison is an individual who maintains a residence at 5336 Vincent Avenue, Los Angeles, CA  90041.

### III.   JURISDICTION

9.   This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act 28 U.S.C. §§ 2201 *et seq.*, and § 1332(a).

10.  It is unclear at this time whether this Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, due to covenants not to sue, governing law and forum selection clauses contained in ¶ 18, ¶ 28 and ¶ 34 of the Settlement Agreement between Harrison, Permanent Impressions, Inc. and TherMark; contrary to the averments made by TherMark. (Complaint ¶ 19)

11.  This Court has personal jurisdiction over TherMark because TherMark filed their lawsuit against Harrison in this District.

### IV.   FACTUAL BACKGROUND STATEMENT

12.  Harrison is the founder of TherMark and the inventor of its patented laser marking technology.  Harrison had been working on the technology since the early 1990s and filed his patent applications in 1997.  The patents began to issue in 2000 and by 2004 TherMark's worldwide sales exceeded $2 Million.  Harrison had raised more than $1 Million of invested working capital for TherMark from "friends and family" and began to look for someone, with the right business experience, to oversee the day-to-day operations of the company and help raise the additional invested capital it would take for the company to reach its full potential.

13.  In August 2005, Harrison hired Momentum Venture Management, LLC to evaluate the company and its business potential and subsequently installed its Manager, Matt Ridenour ("Ridenour"), as CEO of TherMark with the express written agreement and understanding that he would restructure the company, reposition its

1  business strategy and raise a minimum of $1 Million of institutional investment
2  capital.  During the ensuing months Harrison assisted Ridenour in his fundraising
3  efforts with technical demonstrations and explanations of the patented laser marking
4  technology to potential investors, but had little actual participation in or knowledge of
5  the fundraising activities or direct contact with the majority of the potential investors.

6      14.  On or about April 21, 2006 Ridenour succeeded in raising an initial round
7  of investment capital of approximately $1.7 Million from the local Tech Coast and
8  Pasadena Angel investor organizations and Harrison agreed to step down as
9  TherMark's President to become Chief Technology Officer and to lead the company's
10  product innovation, while remaining as Secretary and Chairman of the Board of
11  Directors; however, Harrison and his original "friends and family" group of common
12  shareholders retained voting control of the company.  Ridenour continued as CEO of
13  TherMark and began to hire and build his management team and execute the business
14  plan and strategy that he had presented to the investors during his fundraising efforts.

15      15.  Just four months later, in August 2006, Ridenour announced to the Board
16  that a spreadsheet error had been found in his financial projections and the company
17  would need to raise more money by the early spring of 2007.  Harrison carefully
18  studied the original financing documents and shareholder agreements and determined
19  that the anticipated additional investment would not cause him and his original
20  "friends and family" group to lose voting control of the company, so Harrison agreed
21  to the second round of investment which raised approximately $870,000 in March
22  2007; however, contrary to TherMark's assertions, Harrison had no direct
23  involvement in the fundraising activities other than signing documents as Secretary of
24  TherMark.

25      16.  Concurrent with this fundraising activity, Ridenour stepped down as CEO
26  of TherMark, as originally anticipated, and was succeeded by Joel Assaraf
27  ("Assaraf"), one of his hired management team members.  By this time disputes had
28  arisen between Harrison and TherMark's management team and Board concerning

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

1   the company's financial condition, its overpaid management team members and the

2   lack of progress being made when measured against Ridenour's strategic business

3   plan and financial projections.

4        17.  Unbeknownst to Harrison at the time, certain members of TherMark's

5   management team and Board were verbally discussing, exchanging written

6   communications and secretly meeting to express their opinions about, and discuss,

7   Harrison's business skills and personal behavior during the summer of 2006.  In one

8   such written communication, an email to Ridenour dated June 9, 2006, Assaraf went

9   so far as to say:  *"What I'm learning about Paul besides the fact that he has a*

10  *drinking problem, is that: 1.  He's a perfectionist  2.  His business acumen is poor."*

11  Assaraf went on to recommend that Harrison be barred from the company's premises

12  and *" ... not be involved in the day-to-day running of the business."*  Assaraf had

13  formed and expressed these opinions after being on the job for less than 8 weeks,

14  during which time period Harrison had been absent on company travel for

15  approximately 50% of the time.  It can only be assumed at this time that Harrison's

16  continued presence was tolerated primarily because he and his original "friends and

17  family" group maintained voting control of the company.

18       18.  During this same time period, and as part of a pre-arranged and

19  coordinated plan with TherMark's management and Board, Harrison formed co-

20  defendant Permanent Impressions, Inc. ("PI"), a Nevada corporation, in December

21  2006 and opened an office in Las Vegas, at his own expense, in order to further

22  develop TherMark's laser marking technology to include color marking and

23  decoration.  TherMark participated jointly, in side-by-side booths, with PI at the ARA

24  Show, an industry trade show in Las Vegas, during March 2007 and TherMark went

25  so far as falsely claiming full credit for the formation of PI in a news release

26  published to promote the new and emerging color laser marking technology being

27  demonstrated at the ARA trade show.  PI also provided in-house laser marking

28  services to TherMark on a contractual basis which was fully disclosed to shareholders

1  and investors in Section 3.21 of the Series A Preferred Stock Purchase Agreement
2  prior to the closing of the March 2007 second round of fundraising.

3     19.  Shortly thereafter, Harrison was terminated by TherMark's Board as Chief
4  Technology Officer and Secretary during the summer of 2007, but Harrison continued
5  to serve as Chairman of the Board of Directors. (Complaint ¶ 58)

6     20.  Harrison was surprised by the Board's decision and negotiations ensued
7  thereafter.  Harrison hired an attorney to more fully explore and understand his
8  rights, as well as those of his "friends and family" group of common shareholders.
9  Ultimately, Harrison decided to acquiesce, confident in the knowledge that he and the
10  original "friends and family" group of common shareholders still maintained voting
11  control of the company.  To placate Harrison, TherMark retained Harrison and PI to
12  provide technical support and laser marking services.  Harrison signed the Separation
13  Agreement in early September 2007 which contained a retroactive effective date of
14  July 31, 2007 and a termination date of January 31, 2008 (attached to and
15  incorporated into the Complaint as Exhibit D). (Complaint ¶ 59)

16     21.  By the fall of 2007, TherMark's financial condition had continued to
17  deteriorate and it had become apparent that TherMark would need yet another capital
18  infusion.  Harrison was still Chairman and disagreed with Ridenour and the investor
19  representative members of the Board concerning the terms of another round of
20  fundraising without some changes in the company's operations and management
21  team.

22     22.  At the October 24, 2007 Board meeting Harrison and certain of his original
23  "friends and family" group of common shareholders removed Ridenour from the
24  Board of Directors by written consent and replaced him with James Scott ("Scott"), a
25  founding shareholder and one of the "friends".  However, since Harrison was no
26  longer Secretary of TherMark, the minutes of that meeting were not published for
27  more than one year, contrary to TherMark's own published Rules of Procedure and
28  Responsibilities for the Board of Directors and Cal. Corp. Code § 5210 - § 5215.

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

1   When finally published in May 2009 the minutes falsely claimed that Harrison had

2   *"agreed not to effectuate the contemplated change."*

3        23.  On November 5, 2007 Ridenour wrote an email to Scott acknowledging

4   his new position and involvement saying:  *"I am happy that you will potentially*

5   *become more involved with the company. You are a welcome addition."*  He went on

6   to state:  *"With respect to Paul: First, Paul could have been terminated for "cause"*

7   *for some serious misbehavior and violations of fiduciary duty.   Second, Paul has*

8   *not contributed to the business in any way that we can measure for more than a*

9   *year. We made no progress in R&D during the past year and only begin to get*

10  *progress when Joel took over."*   Such false and misleading statements are in direct

11  violation of paragraph 16 of the Separation Agreement, which states in part:

12  *"TherMark's officers shall not make any disparaging remarks, comments or*

13  *statements to anyone either orally or in writing about Employee."*

14       24.  In March 2008 there were a series of three Board meetings at which

15  Harrison maintained his opposition to the terms of a third round of fundraising.  In

16  reliance upon the original incorporation and financing paperwork filed with the

17  Delaware Secretary of State, Harrison argued that the common shareholders still

18  retained voting control of the company, which was running desperately short of cash.

19       25.  Disputes arose among the various Board members about the wording of

20  the Certificate of Designation concerning the voting rights of preferred shareholders

21  and the makeup of the Board and which members could actually vote.  Without any

22  published minutes of the past few Board meetings, Harrison's position that Scott was

23  a bona fide member of the Board and should vote was ignored by some of the

24  investor representative Board members and Ridenour was allowed to vote instead of

25  Scott, and the "supposed" error in wording regarding the voting rights of preferred

26  shareholders versus common shareholders was declared to be a "mistake" and that it

27  should be corrected.

28       26.  Harrison was stunned that such a decision could have been made after

7

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

1   almost two years had passed since the submission of the documents and after the
2   previous two rounds of financing had been completed under the terms of those
3   existing documents. Over Harrison's objections, paperwork was prepared and sent to
4   the Delaware Secretary of State to correct the "mistake" and give voting control of the
5   company to the preferred shareholders.

6       27. By this time the Separation Agreement had expired and Harrison sought
7   legal advice again and threatened legal action to restore the voting control to the
8   common shareholders and re-install himself into TherMark's management. Ridenour
9   wrote in a March 25, 2008 email to Harrison that *"The preferred shareholders feel*
10  *absolutely confident in their legal position and are prepared to litigate to a*
11  *conclusion on the matter. If they prevail, it is my assumption that there would no*
12  *longer be trust / goodwill remaining to offer you a position with the company (and it*
13  *is likely that the fundraising process will have been destroyed – so the company will*
14  *be managed toward some liquidation).* He further stated *"...I sincerely think the best*
15  *option for you is to lay down your sword and try to contribute as a reasonable board*
16  *member."*

17      28. In an effort to placate Harrison again, the Board agreed to retain his
18  services as a consultant for a minimum of one year and, in April 2008, a new
19  Consulting Agreement (attached to and incorporated into the Complaint as Exhibit E)
20  was drawn up by TherMark and signed by Harrison and PI. (Complaint ¶ 61)  The
21  agreement was conditioned upon the success of the third round of financing, which
22  ultimately raised just over $600,000 and was concluded in mid May 2008.  The
23  issuance of these additional shares of a special Series A1 preferred stock absolutely
24  confirmed the preferred shareholders voting control of the company and, as a result,
25  the common shares became worth little or nothing.  Harrison and his original "friends
26  and family" group were effectively "wiped out" financially due to the liquidation
27  preference contained in the revised documents. TherMark terminated the Consulting
28  Agreement immediately after the minimum one year term.

29. In both the Separation Agreement and the Consulting Agreement TherMark insisted upon and specifically inserted provisions to restrict Harrison's activities by including non-compete clauses in Section 7 of the Separation Agreement and Section 9 of the Consulting Agreement in clear violation of California Business and Professions Code § 16600.

30. The California Supreme Court has acknowledged the state's long-standing public policy favoring employee mobility when the court confirmed, as a general rule, that employee non-competition agreements are unenforceable in California (*Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937 (2008)). The court further stated that the code "protects the important legal right of persons to engage in business and occupations of their choosing.

31. In November 2009 Harrison filed a lawsuit against TherMark, Ridenour and the investor representative members of the Board of Directors, among others, alleging breach of fiduciary duties; negligent misrepresentation; attorney negligence; breach of contract; deceit and conversion. (Complaint ¶ 63)

32. TherMark counterclaimed and in February 2011 filed a second action against Harrison, Scott, PI and TBH GmbH ("TBH") among other defendants.

33. TBH is a successful German company manufacturing and selling products used in the laser marking industry. Harrison and PI were working with TBH at the time as a European distributor for products that would compete with TherMark's in the European laser marking marketplace without infringing on TherMark's Patents-in-Suit. Under the threat of extended and expensive litigation in the California courts, TBH ultimately decided that it wasn't worth the financial risk, time and/or expense to continue working with Harrison and PI and, therefore, terminated its relationship with them.

34. TherMark maintained claims for breach of fiduciary duties; breach of contract; interference with contract; interference with prospective business advantage; misappropriation of trade secrets; and declaratory relief. (Complaint ¶ 64) Many of

9

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

1    these claims are the same as or similar to the claims maintained in the current

2    Complaint.

3        35.  Shortly thereafter, on March 31, 2011, the litigation was resolved pursuant

4    to the Settlement Agreement (attached to and incorporated into the Complaint as

5    Exhibit F) which provided for payment of $250,000 to Harrison, the redemption of

6    Harrison's common shares and a full, complete and comprehensive release of any and

7    all claims related to the subject matter of the litigation.

8        36.  Harrison was fully released and forever discharged from any and all

9    liabilities, claims, demands, actions, causes of action or suits of any kind

10   whatsoever, whether known or unknown, suspected or unsuspected as specifically

11   written into, but not limited to, paragraphs 3 and 4 of the Settlement Agreement by

12   TherMark.

13       37.  In the Settlement Agreement TherMark only restricted Harrison's

14   solicitation and non-compete activities to the entities listed on Schedule II of the

15   agreement and Harrison has never solicited or assisted in the solicitation of any of

16   those entities.

17       38.  In the late spring of 2011, Harrison began working with dismissed

18   defendant herein, LaserSketch Ltd. (LaserSketch), and others in the Chicago area on

19   the development of new laser marking products and technology which would not

20   infringe TherMark's Patents-in-Suit.

21       39.  Chemical and laser technology are like many other high tech enterprises;

22   what is new and novel today will be obsolete in just a few years.  Sub-micron particle

23   size materials and nano-technology were only being worked on in the R&D labs of

24   large companies in the 1990s when Harrison reduced his original laser marking

25   technology to practice and applied for his patents.  Today such materials and

26   technology are commonplace and readily available.  The chemistry of these new

27   materials is very different from Harrison's original laser marking technology.

28       40.  In the instant action, TherMark is also attempting to use the restrictive non-

compete provisions of the Invention Assignment Agreement (attached to and incorporated into the Complaint as Exhibit C) (Complaint ¶ 55) which are contrary to California Business and Professions Code § 16600 and the provisions of California Civil Code § 3426 et seq. and from which, Harrison has been fully released in the Settlement Agreement.

41.  Harrison has entered into multiple contracts with TherMark (collectively, the "Contracts").  True and correct copies of the Contracts are attached and fully incorporated as Exhibits C, D, E and F into Plaintiffs' Complaint.

42.  Harrison has never misappropriated any of TherMark's trade secrets and the new product development work with LaserSketch could not have utilized any such trade secrets due to the different chemical properties of the new materials and technology currently available and in use today.  All such development, production and selling activity has been performed without reliance upon and/or direct knowledge of the research and development efforts rendered to TherMark under the terms of the Contracts.

43.  Companies seeking to invoke the trade secrets exception to California Business and Professions Code § 16600 or the provisions of California Civil Code § 3426 et seq. must show that the information they seek to protect is, in fact, a bona fide trade secret.  The alleged trade secret must be specifically identified and a detailed showing is required in order to obtain injunctive relief. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002).

44.  As a result of Harrison's new development activities, Assaraf visited the LaserSketch facility in April 2012 with Ronald Harris, a PhD chemistry consultant, to discuss and compare samples of the new and old laser marking technologies and materials with regard to TherMark's patents.  This visit was nothing short of a blatant attempt to intimidate LaserSketch into breaking off its product development relationship with Harrison, just as TherMark had successfully interfered with the TBH relationship in the recent past.

1   45. In May 2012, Assaraf sent LaserSketch a "Strategic Development and
2   Option Term Sheet" in an effort to entice LaserSketch away from the development
3   activities they were currently engaged in with Harrison and into a similar
4   development program with TherMark; however, upon information and belief,
5   Assaraf failed to offer any real financial incentives or strategic market advantages to
6   LaserSketch and TherMark's effort failed.

7   46. By mid summer 2012, Harrison and LaserSketch had fully developed and
8   successfully tested a new laser marking material and technology that they were
9   confident did not infringe on TherMark's Patents-in-Suit and began demonstrating it
10  to various potential distributors. As a result, dismissed defendant herein, JDS
11  Industries, Inc. ("JDS") ordered the new product in aerosol cans and introduced it,
12  under their trade name, LazerBond LZB 100, to the marketplace and began to sell it at
13  a lower price point than TherMark's similar products, at the end of 2012.

14  47. The LazerBond LZB 100 product won Best New Technology of the Year
15  at the ARA Show in January 2013. Assaraf visited the ARA Show and saw the same
16  basic product being offered for sale by both JDS and LaserSketch under different
17  trade names. Assaraf realized, for the first time, that this new product was a real and
18  emerging threat to TherMark's business. TherMark has tolerated competing laser
19  marking products in the marketplace from other small and/or obscure manufacturers
20  and distributors since 2007, but JDS and LaserSketch posed a real threat to their
21  market share based on their price point, relative business size, well established
22  reputations and multiple warehouse locations within the marketplace.

23  48. TherMark wrote a "Cease and Desist" letter to dismissed defendants
24  herein, JDS and LaserSketch on or about March 14, 2013, prior to filing their
25  Complaint in yet another attempt to intimidate JDS and LaserSketch into breaking off
26  their product development and distribution relationships with Harrison and PI.

27  49. A TherMark press release dated March 20, 2013 stated that TherMark was
28  suing JDS, LaserSketch, Harrison and PI for patent infringement. It did not allege

12
DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

1  patent infringement; it implied unequivocally that JDS, LaserSketch, Harrison and PI
2  were infringing the TherMark Patents-in-Suit in an attempt to interfere with the
3  existing business opportunities and relationships and to scare away any other potential
4  development and/or distribution partners.  To date, TherMark seems to have
5  succeeded because both JDS and LaserSketch have terminated their relationships with
6  Harrison and PI and settled with TherMark in exchange for a release and dismissal
7  from the pending litigation.  All of this without presenting any proof whatsoever of
8  patent infringement – only the prospect of extended and expensive legal proceedings –
9  all in violation of California Business and Professions Code § 17200.  The wording of
10  the infringement press release was intended to mislead the public into thinking that the
11  use of these new products would somehow, inevitably entangle them in the current
12  litigation.  This press release is more like an advertisement intended to mislead the
13  public and is not protected speech or petition activity made before a judicial body.

14      50.  TherMark has brought certain claims, among others, for Breach of
15  Contract, Misappropriation of Trade Secrets and Unfair Business Practices, within the
16  instant Complaint contrary to the provisions of ¶ 28 of the Settlement Agreement,
17  which they had prepared and written in March 2011 and which states:  *"The Parties*
18  *covenant and agree that they have not, either directly or indirectly, and they shall not,*
19  *bring any other claim, action, suit or proceeding against the other Parties regarding*
20  *the matters settled, released and dismissed within this Agreement, and that this*
21  *Agreement is a bar to any such claim, action, suit or proceeding pertaining to the*
22  *issues released."*

23      51.  Upon information and belief, as set forth herein above, TherMark has
24  breached one or more of their agreements with Harrison and engaged in a concerted
25  pattern of outrageous conduct, harassment and intimidation, directed at Harrison and
26  his business associates; which pattern was intended to subject Harrison to such
27  duress, emotional and financial stress, anxiety, worry, nervousness and fright that
28  Harrison would be forced to forego exercising his legal rights.

1  52.  Additionally, upon information and belief, TherMark's actions have been
2  and continue to be willful and done with the intent of causing, or with reckless
3  and/or negligent disregard of the probability of causing, severe emotional distress to
4  Harrison.  Said actions comprised a pattern of misconduct and harassment, devised
5  by TherMark and their Officers and Directors to willfully and maliciously oppress,
6  harass, vex, irritate, coerce, intimidate and annoy Harrison and his business
7  associates.  This pattern of activity encompassed an extended period of time,
8  consisted of numerous discrete abusive acts; and, therefore, has displayed a ruthless
9  and unrepentant attitude on behalf of TherMark and their Officers and Directors
10  toward Harrison.

11  53.  As a direct and proximate result of the aforesaid acts, Harrison has
12  suffered severe emotional distress in the form of sleepless nights, profound
13  humiliation, mental anguish and emotional and physical distress; resulting in the
14  need for Harrison to undergo medical and psychological treatment over the past
15  three years.

16  **DEFENDANT HARRISON'S FIRST AMENDED COUNTERCLAIMS**

17  54.  For his Counterclaims against Plaintiff TherMark, Defendant Harrison
18  states as follows:

19  **FIRST COUNTERCLAIM FOR RELIEF**

20  **(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '223**
21  **PATENT)**

22  55.  Harrison herein alleges and incorporates by reference his Affirmative
23  Defenses and paragraphs 1 through 54 as if set forth fully herein.

24  56.  A real and actual substantial controversy exists between Harrison and
25  Counterclaim Defendants as to the non-infringement of the '223 Patent.

26  57.  Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et*
27  *seq.*, Harrison requests the declaration of the Court that Harrison has not infringed,
28  and does not infringe, any claim of the '223 Patent.

## SECOND COUNTERCLAIM FOR RELIEF

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '436 PATENT)

58. Harrison herein alleges and incorporates by reference his Affirmative Defenses and paragraphs 1 through 57 as if set forth fully herein.

59. A real and actual substantial controversy exists between Harrison and TherMark as to the non-infringement of the '436 Patent.

60. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Harrison requests the declaration of the Court that Harrison has not infringed, and does not infringe, any claim of the '436 Patent.

## THIRD COUNTERCLAIM FOR RELIEF

## (DECLARATORY JUDGMENT OF INVALIDITY AND/OR NON-ENFORCEABILTY OF THE '223 PATENT)

61. Harrison herein alleges and incorporates by reference his Affirmative Defenses and paragraphs 1 through 60 as if set forth fully herein.

62. A real and actual substantial controversy exists between Harrison and TherMark as to the invalidity and/or non-enforceability of one or more claims of the '223 Patent.

63. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Harrison requests the declaration of the Court that one or more claims of the '223 Patent are invalid and/or non-enforceable under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

## FOURTH COUNTERCLAIM FOR RELIEF

## (DECLARATORY JUDGMENT OF INVALIDITY AND/OR NON-ENFORCEABILTY OF THE '436 PATENT)

64. Harrison herein alleges and incorporates by reference his Affirmative Defenses and paragraphs 1 through 63 as if set forth fully herein.

65. A real and actual substantial controversy exists between Harrison and

1 | TherMark as to the invalidity and/or non-enforceability of one or more claims of the
2 | '436 Patent.

3 | 66. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et*
4 | *seq.*, Harrison requests the declaration of the Court that one or more claims of the
5 | '436 Patent are invalid and/or non-enforceable under the Patent Act, 35 U.S.C. §101
6 | *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

7 | **FIFTH AMENDED COUNTERCLAIM FOR RELIEF**
8 | **(UNFAIR BUSINESS PRACTICES – CALIFORNIA**
9 | **BUS. & PROF. CODE § 16600 and § 17200)**

10 | 67. Harrison herein alleges and incorporates by reference his Affirmative
11 | Defenses and paragraphs 1 through 66 as if set forth fully herein.

12 | 68. TherMark has engaged in, and continues to engage in, unlawful, unfair
13 | and fraudulent business practices in California in violation of the Unfair
14 | Competition Law, Calif. Bus. & Prof. Code § 16600 and § 17200 et seq. as alleged
15 | herein above.

16 | 69. TherMark has entered into multiple written Contracts with Harrison
17 | which are attached and incorporated into TherMark's Complaint as Exhibits C to F.

18 | 70. TherMark's conduct in continuing to put restrictive non-compete and
19 | employment provisions into the Contracts contrary to Calif. Bus. & Prof. Code §
20 | 16600 and § 17200 *et seq.* constitutes unfair competition.

21 | 71. TherMark's conduct in failing to publish the minutes of the Board
22 | meetings for more than one year, contrary to TherMark's own published Rules of
23 | Procedure and Responsibilities for the Board of Directors and Cal. Corp. Code § 5210
24 | - § 5215 constitutes unfair competition.

25 | 72. TherMark's conduct in publishing false and misleading minutes of the
26 | October 24, 2007 meeting of the Board of Directors constitutes unfair competition.

27 | 73. Moreover, TherMark's conduct in publishing false and misleading
28 | information in the March 20, 2013 press release contrary to Calif. Bus. & Prof. Code

1 § 17200 *et seq.* constitutes unfair competition.

2      74.  By reason of TherMark's actions, Harrison's reputation and business
3 relationships have been irreparably injured, and such injury will continue unless
4 enjoined by this Court.

5      75.  Upon information and belief, TherMark has derived, received, and will
6 continue to derive and receive from the aforesaid acts of unfair competition gains,
7 profits, and advantages, many of which are not presently known to Harrison.

8      76.  By reason of the aforesaid acts of unfair competition, Harrison has been,
9 and will continue to be, greatly damaged in an amount to be determined at the time
10 of trial.

11              **SIXTH AMENDED COUNTERCLAIM FOR RELIEF**
12            **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

13      77.  Harrison herein alleges and incorporates by reference his Affirmative
14 Defenses and paragraphs 1 through 76 as if set forth fully herein.

15      78.  By example, as set forth herein above, in the Assaraf email of June 9,
16 2006 as well as the Ridenour emails of November 5, 2007 and March 25, 2008,
17 TherMark has engaged in a concerted pattern of written email harassment and
18 intimidation, directed at Harrison and his business associates and relationships,
19 which pattern was intended to subject Harrison to such ridicule, duress, worry,
20 emotional and financial stress, anxiety, fright and nervousness that Harrison would
21 be forced to forego exercising his legal rights.

22      79.  TherMark's actions, by inserting unlawful non-compete and employment
23 provisions into Section 7 of the Separation Agreement and Section 9 of the
24 Consulting Agreement, in clear violation of California Business and Professions Code
25 § 16600, were willful and done with the intent of causing, or with reckless disregard
26 of the probability of causing, severe emotional distress to Harrison.  Said actions
27 comprised a pattern of harassment, devised by TherMark to willfully and
28 maliciously act in furtherance of their conspiracy to thwart, oppress, harass, vex,

1  irritate, coerce, intimidate and annoy Harrison.  The pattern of activity encompassed
2  an extended period of time from 2006 until the present, consisted of numerous
3  discrete abusive acts, and, therefore, displayed a ruthless and unrepentant attitude,
4  on the part of TherMark toward Harrison, resulting in the need for Harrison to
5  undergo medical and psychological treatment over the past three years.

6      80. As a direct and proximate result of the aforementioned acts, Harrison has
7  suffered severe emotional distress in the form of profound humiliation, mental
8  anguish and emotional, financial and physical distress, and has been placed in a state
9  of worry, fright, and nervousness, all to Harrison's damage, in an amount to be
10  shown according to proof at the time of trial.

11     81. The aforementioned conduct of TherMark was oppressive, subjecting
12  Harrison to cruel and unjust hardship in conscious disregard of his rights, was
13  malicious, outrageous and intended to cause injury to Harrison, and was despicable,
14  carried on with a willful and conscious disregard of the rights and safety of
15  Harrison, thereby warranting the assessment of punitive damages against TherMark
16  in an amount to be shown according to proof at the time of trial.

17              **SEVETH COUNTERCLAIM FOR RELIEF**
18                  **(BREACH OF CONTRACT)**

19     82. Harrison herein alleges and incorporates by reference his Affirmative
20  Defenses and paragraphs 1 through 81 as if set forth fully herein.

21     83.  Harrison has performed, or substantially performed, all of the
22  requirements of the Contracts, or was excused from performance.

23     84.  All conditions required for TherMark's performance have occurred.

24     85.  Under the terms of the Settlement Agreement, TherMark agreed *"… that*
25  *they have not, either directly or indirectly, and they shall not, bring any other claim,*
26  *action, suit or proceeding against the other Parties regarding the matters settled,*
27  *released and dismissed within this Agreement, and that this Agreement is a bar to any*
28  *such claim, action, suit or proceeding pertaining to the issues released."*  Harrison is

1 informed and believes and thereon alleges that TherMark has breached the

2 Settlement Agreement by instituting the current legal proceedings contrary to the

3 provisions of ¶ 28.

4      86. Under the terms of the Settlement Agreement, TherMark also agreed that

5 *"Any controversy or claim arising out of or relating to this Agreement in any way,*

6 *including all tort or contract claims, or any other controversy or claim between any*

7 *of the Parties to this Agreement, shall be settled by arbitration in Orange County,*

8 *California. ...The Parties further agree that arbitration is the exclusive and binding*

9 *remedy for any dispute and will be used instead of any court action, which is hereby*

10 *expressly waived, except for any request by either party for temporary or preliminary*

11 *injunctive relief pending arbitration in accordance with applicable law.* Harrison is

12 informed and believes and thereon alleges that TherMark has willfully breached the

13 Settlement Agreement by instituting the current legal proceedings contrary to the

14 provisions of ¶ 34.

15      87. As a direct, proximate and legal result of TherMark's breach of contract,

16 Harrison has suffered great and irreparable harm and continues to suffer loss and

17 general and special damages as alleged above which will be shown by proof at the

18 time of trial, plus interest at the maximum legal rate thereon.

19      88. Upon information and belief, TherMark has derived, received, and will

20 continue to derive and receive from the aforesaid breach of contract, gains, profits

21 and advantages, many of which are not presently known to Harrison.

22                 **ADDITONAL COUNTERCLAIMS FOR RELIEF**

23      89. Harrison specifically reserves the right to assert additional counterclaims,

24 as they become known, during the pendency of this litigation.

25                 **FEDERAL DECLARATORY JUDGMENT ACT**

26      90. Pursuant to the Federal Declaratory Judgment Act, §§ 2201 *et seq.*, this

27 Court may declare the rights and other legal relations of any interested party.

28      91. In the Complaint, TherMark has asserted that Harrison infringes U.S.

1    Patent No. 6,075,223 and U.S. Patent No. 6,313,436.  Harrison has not, and does

2    not, infringe the Patents-in-Suit.  Furthermore, one or more claims of the Patents-in-

3    Suit Suit are invalid under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not

4    limited to §§ 101, 102, 103, and/or 112.

5        92.  There exists a real and actual substantial controversy between Harrison

6    and TherMark before this Court where the relief sought by Harrison will resolve the

7    controversy relative to the respective interests of the parties.

8        93.  Accordingly, Harrison seeks Declaratory Judgment from this Court that

9    (i) Harrison has not, and does not, infringe the Patents-in-Suit; (ii) one or more

10   claims of the Patents-in-Suit are invalid; and, (iii) Harrison should be awarded his

11   costs, attorneys' fees, expenses, and such further relief as may be just and proper.

12                              **PRAYER FOR RELIEF**

13       WHEREFORE, Harrison prays that this Court will grant relief and judgment:

14           a.  That the Complaint be dismissed in its entirety, with prejudice;

15           b.  That no injunctive relief shall issue against Harrison;

16           c.  That TherMark shall take nothing by reason of their Complaint;

17           d.  As to the First Counterclaim for Relief, that the claims of the '223

18   Patent be adjudged not infringed (directly or indirectly, literally or under the

19   doctrine of equivalents) by Harrison;

20           e.  As to the Second Counterclaim for Relief, that the claims of the '436

21   Patent be adjudged not infringed (directly or indirectly, literally or under the

22   doctrine of equivalents) by Harrison;

23           f.  As to the Third Counterclaim for Relief, that one or more claims of the

24   '223 Patent be adjudged invalid and/or non-enforceable;

25           g.  As to the Fourth Counterclaim for Relief, that one or more claims of

26   the '436 Patent be adjudged invalid and/or non-enforceable;

27           h.  As to the Fifth Amended Counterclaim for Relief, that TherMark has

28   engaged in, and continue to engage in, unlawful, unfair and fraudulent business

1  practices; therefore Harrison prays for monetary relief in the amount of Five
2  Hundred Thousand US Dollars ($500,000.00) or such sum as may be shown by
3  proof at the time of trial, plus interest at the maximum legal rate thereon;

4       i. As to the Sixth Amended Counterclaim for Relief, that TherMark did,
5  with deliberate and willful disregard of the probability of causing harm,
6  intentionally inflict emotional distress upon Harrison; therefore Harrison prays for
7  monetary relief in the amount of One Million US Dollars ($1,000,000.00) or such
8  sum as may be shown by proof at the time of trial, plus interest at the maximum
9  legal rate thereon;

10       j. As to the Seventh Counterclaim for Relief, that TherMark did, with
11  deliberate and willful disregard breach the Settlement Agreement; therefore
12  Harrison prays for monetary relief in an amount to be proven at trial;

13       k. That Harrison be awarded his costs, attorneys' fees, expenses, and
14  such other further relief as may be just and proper;

15       l. That Harrison be awarded compensatory damages, consequential
16  damages, general and special damages, according to proof at trial;

17       m. That this action be deemed exceptional under 35 U.S.C. § 285, and
18  judgment be entered awarding Harrison enhanced monetary damages, up to and
19  including trebling of said damages with pre-judgment and post-judgment interest
20  accruing at the maximum legal rate thereon;  and

21       n. Such other and further relief as the Court may deem just and proper.
22  ###
23  ###
24  ###
25  ###
26  ###
27  ###
28  ###

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

## JURY TRIAL DEMAND

In accordance with Federal Rule of Civil Procedure 38, Defendant Harrison/ Counterclaim Plaintiff demands a trial by jury on all issues and claims so triable.

DATED:  July 15, 2013                    Respectfully submitted,

Paul W. Harrison, *in Pro Per*
Defendant / Counterclaim Plaintiff

DEFENDANT PAUL W. HARRISON'S FIRST AMENDED COUTERCLAIMS

# **DECLARATION**

I, Paul W. Harrison, an individual, declare that:

I am a Defendant / Counterclaim Plaintiff in the above-entitled action and that I have read the foregoing DEFENDANT AND CROSS-COMPAINANT HARRISON'S FIRST AMENDED COUNTERCLAIMS and know the contents thereof.  The statements and allegations contained therein are true to the best of my knowledge, except as to those matters which are stated upon current information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 15, 2013 at Los Angeles, CA.

Paul W. Harrison, an individual